UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

DERRICK COURTNEY,

        Petitioner,

v.

ANTHONY HEDGEPATH et al.,

        Respondents.

Case No. CIV S-07-1045 MJP

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

This matter comes before the Court on Derrick Courtney's petition for writ of habeas corpus. (Dkt. No. 20.) Having reviewed the petition, the response (Dkt. No. 34), the reply (Dkt. No. 44), and the balance of the record, the Court DENIES the petition for the reasons set forth below.

## Background

Mr. Courtney is a state prisoner who is incarcerated at Kern Valley State Prison in Delano, California. He seeks relief under 28 U.S.C. § 2254 from his 2004 Sacramento County Superior Court conviction of murder, robbery, and possession of a firearm by a convicted felon, under California Penal Code §§ 187, 211, and 12021, respectively.

On October 23, 2001, Mr. Courtney and Melvin Peete, armed with handguns, entered the home of Karesia and Manuel "Sweet Pea" Trillo. (R.T. 2896-99.) The two men forced the Trillos and their guest, Mr. McKibben, to the floor and then took jewelry, the keys to the Trillos' cars, and Mr. Trillo's diamond-studded gold teeth. (R.T. 2916-18, 2922-25, 2897, 2934, 3653.)

The men exited the house, packed their loot and some tire rims into the Trillos' cars, an Oldsmobile and a Mustang, and then they backed the Oldsmobile onto the street in front of the Trillos' house, where the car stalled. (R.T. 2651-54, 2660-2828, 3036.) Mr. Trillo came out of the house with a shotgun, which he fired at the Oldsmobile. (R.T. 2661-65.) Mr. Peete returned fire against Mr. Trillo and then drove away. (R.T. 2468, 2598, 2666, 2947.) Later the same day, a neighbor observed a man return the Oldsmobile to the Trillo home, throw some bags into the Mustang, and drive away in the Mustang. (R.T. 2039-40.) The Oldsmobile was abandoned on the street in front of the Trillo home. (R.T. 2040, 2045.)

Mr. Trillo had been shot twice in the stomach, and although Mrs. Trillo rushed him to the hospital, he died from blood loss about three hours after arriving at the hospital. (R.T. 2016, 2023-25.)

The police later discovered one of Mr. Courtney's fingerprints on a tire rim in the Oldsmobile. (R.T. 3250, 3315.) No witnesses were able to identify Mr. Courtney in a photo or live lineup. (R.T. 2513-14, 2811, 3153-54.) One witness, who was unable to pick Mr. Courtney out of a lineup, identified him at trial as leaving the scene in the stolen Mustang. (R.T. 2685.)

Edward Russell, a former cocaine dealer now in witness protection, testified that "Dub" (as Mr. Courtney was known on the streets) showed him a purse containing cash, credit cards, jewelry, and a cellphone. (R.T. 3403-04, 3411, 3418.) Dub told Mr. Russell that "they jacked Sweet Pea," that they went into the Trillo house and made everyone lie down on the floor while they went around and "collected things." (R.T. 3422-23.) Mr. Russell called a "WeTip" number, hoping to be rewarded for information about the Trillo homicide. (R.T. 3578.)

The district attorney charged Mr. Courtney on February 3, 2004. (C.T. 194-97.) Prior to trial, Mr. Courtney moved to dismiss the charges due to Mr. Courtney's mental incompetency. (C.T. 33.) The defense argued that the issue of Mr. Courtney's competency was res judicata because a prior court found Mr. Courtney incompetent in 1997. Id. The trial court denied the

defendant's motion to dismiss and a jury found Mr. Courtney competent to stand trial. (R.T. 520.)

Also prior to trial, Mr. Courtney moved to sever his trial from Mr. Peete's, for fear of admission of Mr. Peete's pre-trial statement implicating Mr. Courtney. (C.T. 231-58.) The trial court denied the motion as moot when the prosecutor advised that he would not use the statement as a part of his case-in-chief. (R.T. 631, 637-38.) Mr. Courtney's counsel renewed his motion for severance when Mr. Peete chose to testify in his own defense, and the trial court denied the motion. (R.T. 4009.) During the trial, Mr. Peete testified that he had gone to the Trillo home with another man, that he had merely traded drugs for Mr. Trillo's cars, and that Mr. Courtney had not been involved. (R.T. 4020-23.) The prosecutor then cross-examined Mr. Peete and impeached him with the pre-trial statement incriminating Mr. Courtney. (R.T. 4045-68.)

During jury selection, Mr. Courtney argued that, under Batson v. Kentucky, 476 U.S. 79 (1986), the prosecution's second peremptory strike against an African-American woman, Ms. L., was discriminatory. (R.T. 1528-29.) The trial court denied the motion. (R.T. 1531-34.)

Mr. Courtney was convicted on all charges on June 16, 2004, and was sentenced to life in prison without the possibility of parole, plus a ten-year firearm enhancement, plus two years for the robbery, to be served concurrently. (C.T. 885-88.)

Mr. Courtney appealed directly to the California Court of Appeals, which affirmed his conviction on the merits. (Lod. Doc. 6.) He then petitioned for review to the California Supreme Court, which summarily denied review on January 17, 2007. (Lod. Doc. 7.) On April 12, 2007, Mr. Courtney timely filed a pro se petition for a writ of habeas corpus in the U.S. District Court for the Northern District of California, which was subsequently transferred to this Court. (Dkt. No. 1.) He then filed an amended petition in this Court on December 21, 2007. (Dkt. No. 20.)

Mr. Courtney petitions for a writ of habeas corpus on three grounds: (1) the prosecutor's discriminatory peremptory challenge against an African American juror, in contravention of Batson; (2) the trial court's failure to sever his trial from that of his codefendant, Melvin Peete;

and (3) his mental incompetency. (Dkt. No. 20.) When he filed this petition, Mr. Courtney had not yet exhausted his mental incompetency claim. In order to exhaust this claim at the state level, Mr. Courtney filed a state habeas petition with the California Supreme Court on January 17, 2008, and this Court stayed the current proceedings until that court denied the petition on July 9, 2008. (Lod. Doc. 8.) The State concedes that Mr. Courtney has now exhausted his three proposed grounds for relief. (Dkt. No. 34 at 3.)

## Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this case because Mr. Courtney's petition was filed after the statute's enactment in 1996. AEDPA permits a federal court to issue a writ of habeas corpus only if the state court's adjudication of the charges

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996). "[C]learly established Federal law" includes only the holdings, not the dicta, of the Supreme Court. Carey v. Musladin, 549 U.S. 70, 74 (2006). A decision is contrary to federal law either if it applies a rule that "contradicts the governing law set forth" in Supreme Court cases, or if it arrives at a different result in a case that is "materially indistinguishable" from a previous Supreme Court decision. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A decision involves an unreasonable application of Supreme Court precedent if the court "correctly identifies the governing legal rule but applies it unreasonably to the facts" of a prisoner's case. Id. at 407-08. Finally, the standard for establishing an "unreasonable determination of the facts" is deferential as well: "state court findings of fact are presumed correct unless rebutted by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

For habeas relief to be appropriate, the state court's application of federal law must be more than incorrect or erroneous; instead, that application must have been objectively unreasonable. Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Id. at 411.

### Discussion

The Court does not examine the state trial court rulings directly if a higher court has issued a reasoned decision on direct appeal. Rather, the Court must analyze this last decision. Barker v. Fleming, 423 F.3d 1085, 1091 (9th Cir. 2005). For Petitioner's first two claims, this Court reviews the opinion on the merits by the California Court of Appeals. (Lod. Doc. 6.) However, on Mr. Courtney's final claim, regarding his mental competency, no reasoned decision exists, so this Court reviews the jury's findings at the trial level.

1. **Petitioner's Claim under Batson v. Kentucky**

Mr. Courtney first contends that the prosecutor violated his Fourteenth Amendment rights by using a discriminatory peremptory challenge against an African American woman on the jury venire. (Dkt. No. 20 at 18.) This Court must determine whether the court of appeals' denial of Mr. Courtney's claim was contrary to or involved an unreasonable application of Supreme Court precedent.

Analysis of a claim under Batson involves a shifting burden much like that used in Title VII disparate treatment cases. Johnson v. California, 545 U.S. 162, 171 n. 7 (2005); Batson v. Kentucky, 476 U.S. 79, 94 n. 18 (1986) (noting origin of burden of proof rules). First, the defendant must make a prima facie showing that the prosecutor exercised the peremptory challenge in a discriminatory manner. Batson, 476 U.S. at 93-94. Once this showing is made, the burden shifts to the State to come forward with a racially neutral explanation. Id. at 97. Finally, the trial court must determine whether the defendant established purposeful discrimination. Id. at 98.

To establish a prima facie case of racial discrimination in jury selection, Mr. Courtney must show that (1) the removed prospective juror is a member of a cognizable group; (2) the

prosecution exercised a peremptory challenge to remove the juror; and (3) "the facts and any other relevant circumstances raise an inference" that the challenge was racially motivated. Id. at 96. The first two elements are undisputed in Mr. Courtney's case because the prosecutor used a peremptory challenge to remove Ms. L., an African American woman, from the jury pool. (R.T. 1497, 1528.)

For the third element of Mr. Courtney's prima facie case, the court of appeals reasonably concluded that the facts presented at trial did not raise an inference that the prosecutor's challenge was racially motivated. (Lod. Doc. 6 at 7.) Although the trial court applied a legal standard that the Supreme Court subsequently rejected in Johnson, the court of appeals reasoned that, even under the correct standard, Mr. Courtney could not make a prima facie showing. (Lod. Doc. 6 at 6, 7 (citing Johnson, 545 U.S. at 168.) Under the Johnson standard, a defendant must "produce evidence sufficient to permit . . . an inference that discrimination has occurred." Johnson, 545 U.S. at 170. A defendant's burden in making this showing is not high, but neither is it nonexistent. See id. (relaxing but not eliminating defendant's burden to produce facts sufficient for an inference of discrimination).

Aside from the fact that a black woman was stricken from the jury, the court of appeals found no other "relevant circumstances" to support an inference of discrimination. (Lod. Doc. 6 at 9.) In contrast, Mr. Courtney argues that other relevant facts existed as well: there was no apparent reason other than race to strike Ms. L.; the answers she gave during voir dire showed that she would make a good juror; and she was the sole African American juror on the panel at that time. (Dkt. No. 20 at 26.) However, the appellate court reasonably concluded that there was an apparent race-neutral reason to strike Ms. L. and that her responses to the voir dire questioning suggested she might not make a good juror. (Lod. Doc. 6 at 16.) During questioning, Ms. L. confided that she had been the victim of domestic violence by a man with a substance abuse problem, and that she had also been sexually molested as a child. (R.T. 1008-1010.) Because Mr. Courtney's case involved violent crimes

committed against an alleged drug dealer, Ms. L.'s background might have influenced her objectivity. Moreover, the court of appeals noted that the trial court, finding Ms. L. to be "angry" and "difficult to communicate with," questioned her ability to serve on a jury in "a meaningful way." (Lod. Doc. 6 at 15.) Mr. Courtney points out that "all most defendants can *ever* show . . . is *an apparent absence* of any reason to excuse the juror." (Dkt. No. 20 at 25.) He was unable to show even that. The appeals court observed that Ms. L.'s "own answers to questions on voir dire tend to dispel" any inference of discrimination. (Lod. Doc. 6 at 13.) Even if Ms. L. might have made a good, objective juror in fact, the appeals court reasonably found that some race-neutral reasons existed for striking her from the jury.

Thus, in the absence of other relevant facts, the appeals court properly framed the legal issue before it: "Does the exercise of [a] single peremptory challenge against the only member of a cognizable group on a panel of prospective jurors, standing alone, permit an inference of discrimination against that group?" (Lod. Doc. 6 at 11.) The court reasonably said that it did not. Id. Such an inference would be proper only if there were facts from which that inference could be made. No such facts exist. Moreover, the jury selection occurring after Ms. L.'s removal further dispels any suggestion of discrimination. The prosecutor exercised his second peremptory challenge on Ms. L.; after she was removed, the prosecutor passed up multiple opportunities to strike other African American jurors. (R.T. 1633-35, 1742-45, 1798, 1801-02, 1867; Lod. Doc. 3.) One African American was seated on the jury, and a number of other jurors of minority or mixed heritage were seated as well. (Lod. Doc. 3 at 25, 27, 33, 161, 163, 94, 96, 139, 141, 253, 255, 321, 324.) This record suggests no prosecutorial bias against African Americans.

Because no inference of discrimination can be made from these facts, Mr. Courtney cannot make a prima facie showing of discrimination, even using the more relaxed standard under Johnson, 545 U.S. at 170. Therefore, habeas relief is not appropriate on this claim.

2. **Petitioner's Severance Claim**

Mr. Courtney next argues that his due process rights were violated by the trial court's denial of his multiple motions to sever his trial from Mr. Peete's. (Dkt. No. 20 at 30.) He contends that when Mr. Peete took the stand and admitted making a pre-trial statement that Mr. Courtney was involved in the robbery-murder, defense counsel had no meaningful opportunity to cross-examine Mr. Peete, a violation of due process. (Dkt. No. 20 at 30-32.)

The Supreme Court has held that, in a joint trial, where a non-testifying codefendant's confession implicating the defendant is admitted, the defendant's due process right to confrontation in the form of cross-examination is violated. Bruton v. United States, 391 U.S. 123, 127-28 (1968). Alternatively, "where a codefendant takes the stand in his own defense, denies making an alleged out-of-court statement implicating the defendant, and proceeds to testify favorably to the defendant," then there has been no constitutional violation. Nelson v. O'Neil, 402 U.S. 622, 629-30 (1971). However, in dicta, the Nelson court also noted that if a testifying codefendant did admit to a pre-trial statement but denied its truthfulness, then cross-examination by defendant's counsel would be futile, thus implying a constitutional violation. Id. at 629. Because in Mr. Courtney's own trial, Mr. Peete also admitted to making the out-of-court statement but denied its truthfulness, Mr. Courtney relies on Nelson to support his claim. (Dkt. No. 20 at 31-32.) Dicta is not federal precedent upon which this Court can rely in determining whether habeas relief is appropriate. Carey, 549 U.S. at 74. However, Supreme Court precedent also includes the legal principles flowing from it, and a state court decision may be overturned if it "unreasonably refuses to extend a principle to a new context where it should apply." Williams, 529 U.S. at 407. In Mr. Courtney's case, although the extension of the legal principle established in Nelson may be appropriate, this Court need not decide the issue because it concludes that, even if a violation occurred, it was harmless.

The California Court of Appeals, using the state standard to determine whether "joinder actually resulted in 'gross unfairness' amounting to a denial of due process,"

reasonably concluded that, in light of the other evidence presented at trial, Mr. Peete's testimony did not affect the jury's verdict. (Lod. Doc. 6 at 22-23 (citing People v. Mendoza, 24 Cal. 4th 130, 162 (2000).) This inquiry comports with the Supreme Court harmless error standard, which instructs that a constitutional error made during trial will not warrant habeas relief unless the violation "had a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993). Under both standards, the court must look to the actual effect of the trial court ruling on the jury's ultimate decision. The evidence of Mr. Courtney's guilt, though not as strong as that against Mr. Peete, was nonetheless more than sufficient for a reasonable jury to convict him. Mr. Courtney boasted of his crime to Mr. Russell. (R.T. 3422-23.) Although Mr. Russell's credibility might be questionable, the appeals court noted that the details he provided to the police were "remarkably similar to the facts as described by other witnesses." (Lod. Doc. 6 at 23.) The jury would have heard all of the details of Mr. Courtney's involvement in the crime even without Mr. Peete's testimony. In addition, Mr. Courtney's fingerprint was found on a wheel rim found inside the stolen Oldsmobile. (Lod. Doc. 6 at 24.) Even had Mr. Peete not testified, a rational trier of fact certainly had a sound basis for convicting Mr. Courtney of the crimes with which he was charged.

Given all of this additional evidence, Mr. Peete's testimony, though detrimental, did not have a substantial and injurious effect in determining the jury's verdict. Therefore, the trial court's failure to sever Mr. Courtney's trial from Mr. Peete's does not warrant habeas relief.

3. **Petitioner's Mental Competency Claim**

Finally, Mr. Courtney argues that the trial court violated his due process right not to be tried while mentally incompetent. (Dkt. No. 20 at 32.) The State asserts that Mr. Courtney is procedurally barred from bringing this claim because the California Supreme Court refused to entertain the merits of the claims, instead invoking a state procedural rule instructing that

habeas relief is inappropriate where the claimed errors could have been, but were not, raised on timely appeal. (Dkt. No. 34 at 24; Lod. Doc. 8 (citing In Re Dixon, 41 Cal.2d 756, 759 (1953)). When a state prisoner defaults his federal claims in a state court pursuant to an independent and adequate state procedural rule, this Court must dismiss the claim, absent a showing of cause and prejudice. Coleman v. Thompson, 501 U.S. 722, 750 (1991).

Although the parties disagree whether the procedural bar doctrine even applies, review on the merits is appropriate in either event because Mr. Courtney shows both cause and prejudice. Mr. Courtney had good cause for defaulting his claim; although he asked his appointed defense attorney to appeal the issue of his competency to the state court of appeals, that attorney failed to do so. (Dkt. No. 44 at 13.) In addition, if the trial court erred by permitting Mr. Courtney to be tried while incompetent, then this decision was prejudicial because he was subjected to a trial that should have never occurred.

Therefore, this Court must determine whether the trial court erred by permitting Mr. Courtney's trial to go forward. Prior to trial, his defense counsel moved to dismiss the charges due to Mr. Courtney's mental incompetency. (C.T. 33.) A different court had previously found Mr. Courtney incompetent in 1997, and his defense attorney argued that the issue was res judicata. Id. The court denied the motion, reasoning that just because Mr. Courtney was incompetent in 1997, it "does not appear to the Court that that is res judicata with the issue on whether or not he is legally competent now." (R.T. 15.) This Court does not review that state law ruling. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (emphasizing that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). The question of Mr. Courtney's competency was then put before a jury, which found him competent to stand trial for the robbery and murder. (R.T. 520.)

Under AEDPA, the jury finding on Mr. Courtney's competency should be overturned either if it involved an "unreasonable application" of clearly established federal law or was "based on an unreasonable determination of the facts in light of the evidence presented in the

ORDER - 10

State court proceeding." 28 U.S.C. § 2254(d). "[S]tate court findings of fact are presumed correct unless rebutted by clear and convincing evidence." Id. § 2254(e)(1). A state court's finding of competency is a finding of fact entitled to this presumption. Demosthenes v. Baal, 495 U.S. 731, 735 (1990).

First, Mr. Courtney fails to demonstrate that the jury's finding of competency was based upon an unreasonable application of federal law. Under California law, a competency hearing is designed to determine "whether 'the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner.'" Nguyen v. Garcia, 477 F.3d 716, 724 (9th Cir. 2007.) Accord Drope v. Missouri, 420 U.S. 162, 171 (1975). The defendant is presumed to be mentally competent. See Medina v. California, 505 U.S. 437, 450-51 (1992) (approving of California's placement of the burden of proof in a competency hearing on the defendant). The jury in Mr. Courtney's competency trial was properly instructed as to the law governing incompetency. (C.T. 090.) Therefore, the jury used state law consistent with Supreme Court precedent to conclude that Mr. Courtney was competent to stand trial.

Second, Mr. Courtney fails to provide clear and convincing evidence demonstrating that the jury's finding was based upon an unreasonable determination of the facts in light of the evidence presented at the competency hearing. He provided insufficient evidence to rebut the presumption that the jury's finding of competence is correct. The parties called three psychologists, two of whom testified that Mr. Courtney was competent to stand trial. (R.T. 72, 369, 410.) Dr. Lorin Frank, though previously finding him incompetent, concluded that Mr. Courtney's verbal skills and intelligence were such that he would be able to "cooperate in a rational manner with his counsel in presenting a defense." (R.T. 365, 369.) Dr. Hoffman also concluded Mr. Courtney had sufficient mental faculties to assist his attorney in his own defense. (R.T. 400-04.) Both doctors based their opinions in part on a taped interview of Mr. Courtney by a police detective in which Mr. Courtney appeared able to tell his side of the

story and to understand his situation and his need to avoid self-incrimination. (R.T. 350, 407.) Then the jury also heard testimony that between 1997 and 1999, other mental health practitioners either found Mr. Courtney to have a low IQ (below 50), or to be mentally incompetent or developmentally disabled. (R.T. 50-54.) The jury in the competency trial heard these conflicting facts and also watched the videotaped interview of Mr. Courtney by a detective that the testifying doctors used in their evaluations. (R.T. 452-53.)

Although evidence exists that could support a jury finding of incompetence, Mr. Courtney has not met his burden of presenting clear and convincing evidence that the jury's finding was incorrect. Therefore, because he did not provide any evidence that the jury either improperly applied the law or improperly found Mr. Courtney to be competent, the jury's finding is presumed correct and habeas relief is inappropriate on this ground.

## Conclusion

The California Court of Appeals reasonably applied Supreme Court precedent in concluding that the trial court properly denied Mr. Courtney's motion under <u>Batson</u>, 476 U.S. at 93-94. Next, the court of appeals reasonably concluded that the denial of Mr. Courtney's motion for severance did not result in a proceeding so grossly unfair as to amount to a denial of due process. Finally, Mr. Courtney fails to provide clear and convincing evidence of his mental incompetency to rebut the presumption that the jury's finding of competency was correct. For these reasons, habeas relief is inappropriate.

The clerk is directed to send a copy of this order to all counsel of record.

DATED this 22nd day of April, 2009.

    /s/ Marsha J. Pechman
HONORABLE MARSHA J. PECHMAN
United States District Court Judge

ORDER - 12